# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VIPSHOP INTERNATIONAL HOLDINGS, LIMITED, | ) ) |
| | ) |
| Plaintiff, | ) |
| | ) Honorable Virginia M. Kendall |
| v. | ) Magistrate Judge Jeffrey Cummings |
| | ) Case No. 20-cv-02557 |
| | ) |
| TRANSPACIFIC TRADE CENTER, LLC and KETTY PON (a/k/a KITTY PON), | ) ) |
| | ) |
| Defendants. | ) |

## ANSWER TO COMPLAINT

Now come the defendants, TRANSPACIFIC TRADE CENTER, LLC and KETTY PON (a/k/a KITTY PON), by and through their attorneys, TRIBLER ORPETT & MEYER, P.C., and for their Answer to Plaintiff's Complaint, state as follows:

## INTRODUCTION

1.      In the midst of the global pandemic currently ravaging much of the world, schemers are out there, working to take advantage of the crisis for their own financial profit even as medical workers are putting their lives on the line treating people suffering from the novel coronavirus. Defendants Ketty Pon aka Kitty Pon and Transpacific Trade Center LLC (collectively "Defendants") are two of those bad characters.

**ANSWER:      Defendants deny that the allegations in paragraph 1 relating to the nature of their actions accurately or fully describe the reality of the situation.**

**Defendants make no answer to the remaining allegations in paragraph 1,**

**which are argumentative and speculative and fail to allege facts upon which an answer may be based. To the extent that an answer is required to any such remaining allegations, Defendants deny those allegations.**

2.      Pon promised to provide more than $2.5 million USD worth of protective gear (masks and protective body suits) to Plaintiff, who was the purchasing agent for the Wenzhou government in China in its response to the COVIC-19 pandemic. But she and her sham company took the money and disappeared, not sending the life-saving protective equipment and refusing to refund the funds, defrauding not only Plaintiff and the Wenzhou government, but also the front- line medical providers who risk their lives every day to provide care to sick and suffering people.

**ANSWER:    Defendants admit only that TTC executed two Sales Contracts with Plaintiff for the sale of protective medical equipment on February 12, 2020 ("Sales Contracts"). Defendants make no answer to the remaining allegations in paragraph 2, which are argumentative and speculative and fail to allege facts upon which an answer may be based. To the extent that an answer is required to any such remaining allegations, Defendants deny those allegations.**

3.      Plaintiff entered into two contracts with Pon and her company TTC to provide sorely needed, life-saving protective equipment. These contracts totaled more than $2.5 million USD for protective gear that front-line medical providers need immediately. Pon promised to deliver the masks and body suits within ten (10) days and required Plaintiff to pay in full for the goods upon signing the contracts. Plaintiff received approval and the funds from the Wenzhou government, signed the contracts, and transferred the money to Defendants' account.

**ANSWER:** **Defendants admit only that TTC executed the Sales Contracts. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 3 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

4.      The time for delivery came and went, with no masks and no protective suits. Plaintiff demanded refund of the purchase prices. Pon stopped responding to Plaintiff or its agents. When one of Plaintiffs' agents was able to finally reach her, Pon claimed that the banks in New York and Chicago were closed and preventing her from refunding the money to Plaintiff. This was not true.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 4 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

5.      Eventually, one of Plaintiffs agents prevailed upon Pon to refund approximately the price of one of the contracts, half a million dollars. But the remaining, almost two million US dollars, has not been repaid. And, based on the documents that Pon showed Plaintiff's agent, Pon has already diverted those two million dollars for unknown purposes.

**ANSWER:** **Defendants admit only that TTC refunded $531,400 to Plaintiff. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 5 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

6.      There's more, as is almost always the case when an unsavory character takes advantage of crises. The company that Pon used to sign the contracts with Plaintiff, defendant Transpacific Trade Center LLC, is, upon information and belief, a shell company that Pon

completely controls and dominates. The address she listed in the contracts belongs to other companies, not Pon or TTC. Pon initially used her home address in discussions with Plaintiff when setting the prices for the protective gear. The bank account to which Plaintiff transferred the money lists Pon's home address as the business address. Upon information and belief, based on documents shown to Plaintiff's agent, the account is Pon's personal account, not a business account for TTC.

**ANSWER:** **The allegations in paragraph 6 are argumentative and speculative and fail to allege facts upon which an answer may be based. To the extent that an answer is required to any such remaining allegations, Defendants deny those allegations.**

7.      Pon has a track record of spinning up shell companies, taking money from people to whom she promised to provide goods or services, and absconding with the money. Publicly available documents indicate that Pon and another of her entities, Pactrans Air & Sea, Inc. defrauded the Union Pacific railroad of more than $5 million USD. (See *Union Pac. RR Co. v. Pactrans Air & Sea, Inc.*, Case No. 1:16-cv-8092 (Complaint, August 15, 2016).

**ANSWER:** **Upon information and belief, Defendants deny the allegations in paragraph 7.**

8.      Plaintiff brings this action in aid of its efforts to hold Defendants accountable for their fraud and breaches of contracts. Plaintiff seeks injunctive relief in aid of arbitration, compelling Defendants to participate in arbitration at the China International Economic and Trade Arbitration Commission ("CIETAC"); preventing Defendants from dissipating any and all property, including the home that Pon owns in Bloomingdale, Illinois, the TTC PNC bank accounts, and any and all assets to which Pon or TTC has access or over which Pon has control;

and ordering Defendants to provide an accounting of the funds Plaintiff transferred to

Defendants in February 2020.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 8 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

**<u>PARTIES</u>**

9. Plaintiff VIPShop International Holdings Limited is a Hong Kong limited company, with a principal place of business at Flat/Rm 04-05, 16/F, the Broadway, 54-62 Lockhart Road, Wanchai, Hong Kong. Plaintiff acted on behalf of the government of Wenzhou, China in negotiating the deal with defendant Pon for protective gear and entering into the contracts at issue here.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 9 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

10. Defendant Transpacific Trade Center LLC ("TTC") is an Illinois limited liability company. According to filings made with the United States Department of Transportation, TTC is a transportation company that is "not authorized" by the US DOT and has a business address of 951 Thorndale Ave. # 961, Bensenville, Illinois 60106. Upon information and belief, Defendant Pon runs TTC out of her home at 354 Donna Lane, Bloomingdale, Illinois 60108. Upon information and belief, at all relevant times, Defendant Pon is the sole manager of and owns one hundred percent of the membership interests of Defendant TTC and exercises full dominium and control over Defendant TTC.

**ANSWER:** Defendants admit only that TTC's principal business office is located at 951 Thorndale Ave., Bensonville, IL 60106. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 10 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.

11. Defendant Ketty Pon is also known as Kitty Pon. Pon is an individual who resides at 354 Donna Lane, Bloomingdale, Illinois 60108.

**ANSWER:** Defendants admit only that Ms. Pon resides at 354 Donna Lane, Bloomingdale, Illinois 60108. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 11 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.

## JURISDICTION AND VENUE

12. This Court has diversity jurisdiction over this dispute because Plaintiff is a Hong Kong company and the Defendants are a United States resident and entity, and the amount in controversy is greater than the jurisdictional limit.

**ANSWER:** Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 12 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.

13. Venue is proper in the Northern District of Illinois because, inter alia, Defendant TTC is an Illinois limited liability company with its principal place of business in the Northern District of Illinois, and Defendant Pon is a resident of the state of Illinois and the Northern District of Illinois.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 13 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

<u>**THE CONTRACTS FOR PROTECTIVE GEAR**</u>

14.  Plaintiff was charged by the Wenzhou government to procure protective gear for the mid-sized Chinese city's front-line medical responders, as they fought against the novel coronavirus in China.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 14 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

15.  Plaintiff was introduced to Defendant Pon as someone who could provide protective gear in a short time frame. Pon claimed that she would be able to provide Plaintiff with the required 3M protective gear, and held herself out as a reliable business partner.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 15 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

16.  Defendant Pon represented to Plaintiff that she had the experience and access to protective gear to fulfill Plaintiff's procurement needs (on behalf of the Wenzhou government). She affirmatively represented to Plaintiff that she would provide, within ten (10) days, original 3M products, manufactured by 3M in compliance with 3M standards, and in 3M packaging.

**ANSWER:** **Defendants admit only that the Sales Contracts called for the delivery of protective gear manufactured by 3M within ten (10) days of execution. Defendants have insufficient knowledge upon which to form a belief as to the**

**truth of the remaining allegations in paragraph 16 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

17.     Plaintiff and Defendant Pon negotiated prices for purchasing and shipping more than one hundred thousand masks and protective body suits. Pon's prices went up before Plaintiff signed the contracts for the procurement.

**ANSWER:     Defendants admit only that TTC engaged in negotiations with Plaintiff before executing the Sales Contracts. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 17 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

18.     In reliance on Pon's affirmative misrepresentations and desperate for the life-protecting gear, Plaintiff, on behalf of the Wenzhou government, entered into two contracts or purchase agreements with Defendants. True and correct copies of these contracts are attached hereto as Exhibit A ("Contract 1" with a total purchase price of $1,999,500) and Exhibit B ("Contract 2" with a total purchase price of $531,400). Together Contract 1 and Contract 2 are referred to as the "Contracts."

**ANSWER:     Defendants admit only that TTC executed the Sales Contracts with Plaintiff which are marked as Exhibit A and Exhibit B to Plaintiff's complaint. Upon information and belief, Defendants deny the remaining allegations in paragraph 18.**

19.     At Pon's insistence, Plaintiff agreed to pay the full Contract prices upon signing, by transferring the amounts to accounts listed in the Contracts that, upon information and belief,

Pon controlled. The accounts, as recorded in the Contracts, listed Pon's home address. (Exs. A & B at, ¶ 8.)

**ANSWER:** **Defendants admit only that the Sales Contracts called for payment upon execution. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 19 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

20.     The Contracts provided for the purchase of 230,000 N95 masks and 120,000 protective suits:

|  | Masks (3M N95-1860) | Protective Clothing (3M-4565) |
|---|---|---|
| Contract 1 *total value 1,999,500.00 USD* | 150,000 | 100,000 |
| Contract 2 *total value 531,400.00 USD* | 80,000 | 20,000 |
| **TOTAL** Contracts 1 & 2 | 230,000 | 120,000 |

**ANSWER:** **Defendants admit the allegations found in paragraph 20.**

21.     Defendants affirmed the representations and warranties she made during negotiations in the Contracts signed with Plaintiff. (See Exs. A & B at ¶ 10.)

**ANSWER:** **Defendants admit only that various warranties were included in the Sales Contracts. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 21 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

22.     By executing the Contracts, Defendants also affirmed that they would refund the purchase prices if the protective gear did not meet standards, and that they would compensate Plaintiff for damages incurred therewith. (Exs. A & B at ¶¶ 10.4, 13.)

**ANSWER:     Defendants deny the allegations found in paragraph 22.**

23.     Plaintiff and the Wenzhou government relied on Pon's representations concerning her experience, the goods she would provide, the warranties about the goods, and her affirmations concerning refunds and damages in entering into the Contracts with Defendants and transferring approximately $2.5 million USD to Defendants.

**ANSWER:     Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 23 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

24.     On or about February 12, 2020, Plaintiff executed the two Contracts. Before and on that date, Plaintiff transferred approximately $2,530,900 to Defendants' accounts.

**ANSWER:     TTC admits only that the Sales Contracts were executed on February 12, 2020. Defendants have insufficient knowledge upon which to form a belief as to the truth of the remaining allegations in paragraph 24 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

25.     The Contracts provided that Defendants would provide the protective gear with ten (10) days of Plaintiff paying the full purchase price. (Exs. A & B at ¶ 5.)

**ANSWER:     Defendants admit only that the Sales Contracts called for delivery within 10 days of receiving payment.**

26.     The Contracts also required Defendants to fully refund the entire purchase price if delivery was not made within ten (10) days of Plaintiff paying the full purchase price and

required Defendants to provide the full procurement - partial delivery was specifically disallowed. (Exs. A & B at ¶¶ 6, 10.)

**ANSWER:    Defendants deny the allegations found in paragraph 26.**

27.    The Contracts are governed by the laws of the People's Republic of China ("PRC") and require arbitration of disputes before the China International Economic and Trade Arbitration Commission. (Exs. A & B at 114.)

**ANSWER:    Defendants admit the allegations found in paragraph 27.**

## DEFENDANTS TAKE PLAINTIFF'S MONEY

## AND FAIL TO PROVIDE THE PROTECTIVE GEAR

28.    Plaintiff paid the purchase price for Contract 1 on February 7, 2020 and February 11, 2020. Defendant Pon confirmed receipt of the funds.

**ANSWER:    Defendants admit that on or about February 7, 2020 and on or about February 11, 2020, Plaintiff paid the purchase price for Contract 1.**

29.    Plaintiff paid the full purchase price for Contract 2 on February 12, 2020. Defendant Pon confirmed receipt of the funds.

**ANSWER:    Defendants admit that on or about February 12, 2020, Plaintiff paid the purchase price for Contract 2.**

30.    By February 22, 2020, Plaintiff still had not received any shipping information from Defendants, which was required by the Contracts. (Exs. A & B at ¶ 9.) Plaintiff reached out to Pon, who made various excuses for the delay in shipping before she stopped responding.

**ANSWER:    Defendants deny that they did not provide shipping information to the Plaintiff. Defendants further assert that they provided information to Plaintiff concerning delays from 3M and its ability to fulfill the order.**

31.         Plaintiff demanded that Defendants refund the full amounts paid ($2,530,900) for the undelivered protective gear.

**ANSWER:    Defendants admit the allegation found in paragraph 31.**

32.    Defendant Pon has refused to refund, making one excuse after another in vain attempts to excuse her failure to refund more than two and a half million dollars.

**ANSWER:    Defendants deny the allegations found in paragraph 32.**

33.    Finally, on or about March 6, 2020 (after Plaintiff hired counsel in the United States to obtain the refunds), Pon sent approximately $531,400 by wire as a partial refund for the breached Contracts.

**ANSWER:    Defendants admit only that, on or about March 6, 2020, TTC refunded $531,400 to Plaintiff by wire transfer as a partial refund. Upon information and belief, Defendants deny the remaining allegations included in paragraph 33.**

34.    Since March 6, 2020, neither Defendant has made any payment or refund to Plaintiff. Defendants owe Plaintiff almost two million dollars, plus damages incurred.

**ANSWER:    Defendants deny the allegations found in paragraph 34.**

## INJUNCTIVE RELIEF IN ASSISTANCE OF ARBITRATION

35.    As detailed above, Defendants have defrauded Plaintiff of at least $1,999,500.

**ANSWER:    Defendants deny the allegation found in paragraph 35.**

36.    Plaintiff transferred at least $2,530,900 to Defendants' bank account at PNC.

**ANSWER:    Defendants admit that on or about February 7, 2020, on or about February 11, 2020, and on or about February 12, 2020, Plaintiff paid the combined purchase price for the Sales Contracts.**

37. As detailed above, Defendant Pon made the misrepresentations to Plaintiff that induced it to enter into the Contracts and pay approximately $2,530,900 to Defendants.

**ANSWER:      Defendants deny the allegations found in paragraph 37.**

38. Defendant Pon is the only member of Defendant TTC and she completely controls and dominates it.

**ANSWER:      Defendants admit that Ms. Pon is the only member of Transpacific Trade Center, LLC.**

39. Defendant Pon uses her home address as the banking address for Defendant TTC.

**ANSWER:      Defendants admit the allegation found in paragraph 39.**

40. Based on photos and screenshots that Defendant Pon shared with Plaintiff's agent, Defendants have already diverted for unknown purposes most of the $2.5 million that Plaintiff paid for the protective gear. Upon information and belief, Defendant TTC has significantly less than the almost $2 million USD owed to Plaintiff in its bank account.

**ANSWER:      Defendants deny the allegations found in paragraph 40.**

41. Upon information and belief, Defendant Pon owns her residence at 354 Donna Lane, Bloomingdale, Illinois 60108 ("Pon Real Property"). The value of the Pon Real Property is estimated to be more than $625,000 (the price when Pon purchased it).

**ANSWER:      Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 41 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

42. The Court should enter a temporary restraining order and injunction preventing Defendants from dissipating any and all assets that could be used to satisfy the obligations owed

to Plaintiff. These assets include the Pon Real Property, Defendant Pon's bank and brokerage accounts, and Defendant TTC's bank and brokerage accounts.

**ANSWER:** **Paragraph 42 fails to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Defendants deny those allegations.**

43.     Plaintiff is required to procure protective gear for front-line medical workers in Wenzhou and other cities in China. Without the refund of the approximately $2 million USD that Plaintiff paid in February 2020 to Defendants, Plaintiff cannot procure the necessary protective gear.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 43 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

44.     Not only is Plaintiff's business injured, but thousands of medical workers are potentially going without or with insufficient protection as they battle the novel coronavirus.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 44 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

## FIRST CLAIM AGAINST DEFENDANTS

(Injunctive Relief, Based on Fraud)

45.     Plaintiff repeats and makes a part hereof each and every allegation set forth in Paragraphs 1 through 44 as if fully set forth herein.

**ANSWER:     Defendants adopt and restate its answers to paragraphs 1-44, inclusive, in Plaintiff's Complaint as its answer to the same numbered paragraphs of this count as though set forth fully herein.**

Rescission Based on Fraud

46.     As set forth in detail above, Defendant Pon falsely promised to provide life-saving medical protective gear in exchange for approximately $2.5 million USD to Plaintiff, the purchasing agent for the city of Wenzhou in China.

**ANSWER:     Defendants deny the allegations found in paragraph 46.**

47.     At the time that Defendant Pon made the false promises, she knew that she did not have the protective gear. Yet, Defendant Pon represented to Plaintiff that she and Defendant TTC would provide the specified protective masks and PPE within ten days and required Plaintiff to pay in full for the protective gear before it was shipped.

**ANSWER:     Defendants dent the allegations found in paragraph 47.**

48.     In reliance on Defendants' false and fraudulent statements, both made before the contracts were signed and in the contracts themselves, Plaintiff transferred $2,530,900 USD to Defendant TTC's bank account, on Defendant Pon's instructions.

**ANSWER:     Defendants deny the allegations found in paragraph 48.**

49.     Defendants have not provided any of the protective gear. Defendants have not refunded the balance of the contracts to Plaintiff, damaging Plaintiff in at least the amount of $1,999,500 in actual funds that were supposed to be used to purchase life-saving medical equipment and an amount to be determined in reputational and other damage.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 49 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

50.     Plaintiff is therefore entitled to rescind the Contracts and Defendants are required to return all monies paid to Plaintiff.

**ANSWER:** **Defendants deny the allegation found in paragraph 50.**

Breach of Contract

51.     Plaintiff and Defendant TTC are parties to Contract 1 and Contract 2.

**ANSWER:** **Defendants admit the allegation found in paragraph 51.**

52.     Plaintiff performed all of its obligations under Contracts 1 and 2.

**ANSWER:** **Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegation in paragraph 52 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

53.     Defendant Pon is the alter ego of Defendant TTC, completely controls and dominates it, and is fully liable for any and all actions taken or not taken by Defendant TTC.

**ANSWER:** **Defendants deny the allegation found in paragraph 53.**

54.     Defendants did not provide the specified protective gear - or any protective gear - called for by the Contracts.

**ANSWER:** **Defendants deny the allegation found in paragraph 54.**

55.     Defendants are obligated to refund in full the payments that Plaintiff made pursuant to the Contracts, totaling $2,530,900.

**ANSWER:** **Defendants deny the allegation found in paragraph 55.**

56. Defendants are also obligated to pay for the damages that Plaintiff has incurred as result of their failure to provide the specified protective gear.

**ANSWER:     Defendants deny the allegations found in paragraph 56.**

57. Plaintiff is entitled to judgment against Defendants for breach of contract in the amount of $1,999,500 plus pre-judgment interest due thereon since February 21, 2020 plus reimbursement for all damages incurred as a result of Defendants' breaches, including the costs and disbursements of this action.

**ANSWER:     Defendants deny the allegations found in paragraph 57.**

58. Plaintiff is pursuing Defendants' breaches of contract through arbitration in China, as called for by the Contracts. Plaintiff filed arbitration with the CIETAC on or about April 16, 2020 and was assigned Application No. WS2020000775.

**ANSWER:     Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 58 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

Fraud in the Inducement

59. At all times relevant hereto, Defendant Pon represented to Plaintiff that she, through her 100% owned and controlled entity, Defendant TTC, had the knowledge, experience, and ability to provide the medical supplies called for by the Contracts.

**ANSWER:     Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 59 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

60.     At all times relevant hereto, Defendant Pon and Defendant TTC knew that Defendant Pon and Defendant TTC did not have the knowledge, experience, or ability to perform under the Contracts, i.e., that they could not provide the necessary (and paid-for) medical supplies.

**ANSWER:     Defendants deny the allegations found in paragraph 60.**

61.     Defendant Pon and Defendant TTC knowingly and intentionally lied about their abilities to induce Plaintiff to (i) enter into Contract 1; (ii) transfer at least $1,999,500 USD to Defendant TTC's U.S. bank account (using Defendant Pon's home address); (iii) enter into Contract 2; and (iv) transfer at least $530,000 USD to Defendant TTC's U.S. bank account (using Defendant Pon's home address).

**ANSWER:     Defendants deny the allegations found in paragraph 61(i)-61(iv) inclusive.**

62.     Plaintiff relied on Defendant Pon's and Defendant TTC's representations and entered into the Contracts and agreed to pay 100% of each contract price in advance, before the medical supplies were shipped or received. Specifically, Plaintiff relied upon Defendant Pon's and Defendant TTC's representations as to their ability to perform under the Contracts and provide 230,000 N95 masks and 120,000 protective suits within ten (10) days, i.e., February 22, 2020.

**ANSWER:     Defendants have insufficient knowledge upon which to form a belief as to the truth of the allegations in paragraph 62 and, therefore, neither admit nor deny these allegations but demand strict proof thereof.**

63.     As a result of Defendant Pon's and Defendant TTC's lies, Plaintiff transferred more than two million US dollars for illusory and non-existent medical supplies.

**ANSWER:     Defendant denies the allegations found in paragraph 63.**

64.     Plaintiff has been damaged and has incurred not only the amounts transferred and not refunded, but also attorneys' fees, costs of securing alternative supplies, and damaged business reputation because of Defendants' fraud.

**ANSWER:     Defendant denies the allegations found in paragraph 64.**

65.     Plaintiff is pursuing Defendants for their fraud in obtaining more than $2.5 million USD from Plaintiff through arbitration in China.

**ANSWER:     Defendants admit only that they were named as defendants in the complaint filed by Plaintiff. Defendants deny the remaining allegations found in paragraph 65.**

Injunctive Relief

66.     Plaintiff is likely to succeed in its rescission, breach of contract, and fraud in the inducement claims against Defendants.

**ANSWER:     Defendants deny the allegation found in paragraph 66.**

67.     Plaintiff has already suffered immediate and irreparable harm as a result of Defendants' breaches of the Contracts and fraud. Plaintiff has been unable to fulfill its obligations to the Wenzhou government to provide protective supplies to medical workers fighting against COVID-19.

**ANSWER:     Defendants deny the allegations found in paragraph 67.**

68.     The balance of equities is heavily in Plaintiff's favor here. Plaintiff believed it was purchasing much-needed supplies to assist front-line medical workers in the fight against a global pandemic, and paid Defendants more than $2.5 million USD for those supplies.

Defendants have apparently absconded with or used the funds, and have failed to provide the purchased medical supplies.

**ANSWER:** **Defendants deny the allegations found in paragraph 68.**

    69.    Plaintiff is seeking injunctive relief from the Court as follows:

    a.    Ordering Defendants to participate in arbitration through the China International Economic and Trade Arbitration Commission, as required by the Contracts;

    b.    Freezing all of Defendants' accounts and assets, including the Pon Real Property, Defendant Pon's bank and brokerage accounts, and Defendant TTC's PNC account, so that any such assets can be used to satisfy the expected arbitration judgment against Defendants for their breaches of contract and fraud; and

    c.    Ordering Defendants to provide an accounting of the funds that Plaintiff transferred on February 7, February 11, and February 12, 2020, including all transfers or disbursements thereof.

**ANSWER:** **Paragraph 69(a) – 69(c), inclusive, fail to allege facts upon which an answer may be based. To the extent that an answer is required to any such allegations, Defendants deny those allegations.**

WHEREFORE, Defendants, TRANSPACIFIC TRADE CENTER, LLC and KETTY PON (a/k/a KITTY PON) by and through their attorneys, TRIBLER ORPETT & MEYER, P.C., move that this Honorable Court enter judgment in its favor and against Plaintiff, VIPSHOP INTERNATIONAL HOLDINGS, LIMITED, plus costs.

Respectfully submitted,

TRIBLER ORPETT & MEYER, P.C.


s/ Panos T. Topalis
Panos T. Topalis – ARDC #6202025
Kevin J. Grigsby - ARDC # 6332750
Tribler Orpett & Meyer, P.C.
225 W. Washington Street, Suite 2550
Chicago, IL 60606
(312) 201-6400
pttopalis@tribler.com
kjgrigsby@tribler.com

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that a true and correct copy of Defendants' Answer to Plaintiff's Complaint was served upon:

<u>**Attorneys for Plaintiff**</u>
Jeffrey M. Schieber, Esq.
Taft Stettinius & Hollister, LLP
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601
(312) 527-4000
jschieber@taftlaw.com

Kristie Blase, Esq.
CKR Law, LLP
1330 Avenue of the Americas
New York, NY 10019
kblase@ckrlaw.com

service was accomplished pursuant to ECF as to Filing Users and complies with LR 5.5 as to any party who is not a Filing User or represented by a Filing User by mailing a copy to the above-named attorney or party of record at the address listed above, from 225 W. Washington Street, Suite 2550, Chicago, IL 60606, prior to 5:00 p.m. on the 16th day of June, 2020, with proper postage prepaid.

s/     Panos T. Topalis
an Attorney